Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| CARMEN M. BÁEZ RIVERA Y LA SUCESIÓN DE NÉSTOR NAZARIO MORENO COMPUESTA POR SU ESPOSA CARMEN M. BÁEZ RIVERA Y SUS HIJOS ELIZAMA NAZARIO PACHECO, TAMARIS NAZARIO PACHECO, CAROLINE NAZARIO PACHECO, AMY NAZARIO PACHECO, SHARON NAZARIO PACHECO Y DIEGO JOSÉ NAZARIO BAÉZ<br><br>**PETICIONARIOS**<br><br><br>v.<br><br>DR. JOSÉ R. CRUZ CESTERO, ET AL.<br><br>**RECURRIDO** | KLCE202400697 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br><br>Caso Núm.<br>J DP2013-0471<br><br>Sobre:<br>Impericia Médica |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Pagán Ocasio, juez ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de julio de 2024.

## I.

El 24 de junio de 2024,[2] la señora Carmen M. Báez Rivera y la Sucesión del señor Néstor Nazario Moreno compuesta por esta y sus hijos- la señora Elizama Nazario Pacheco, la señora Tamaris Nazario Pacheco, la señora Caroline Nazario Pacheco, la señora Amy Nazario Pacheco, la señora Sharon Nazario Pacheco y el señor Diego José Nazario Báez- (en conjunto, parte peticionaria) presentaron un

---

[1] Véase Orden Administrativa OATA-2023-116.

[2] Nótese que, tal como se desprende de los ponches, el recurso de *Certiorari* fue presentado ante el Tribunal de Primera Instancia, Sala Superior de Ponce, el 24 de junio de 2024, y recibido en la Secretaría de este Tribunal al siguiente día, el 25 de junio de 2024. Por lo tanto, el recurso de *Certiorari* fue presentado dentro del término dispuesto por la Regla 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.2.

recurso de *Certiorari* por el que solicitaron que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI o foro primario) el 22 de mayo de 2024, notificada y archivada en autos el 24 de mayo de 2024;[3] y la *Resolución* emitida por dicho foro el 20 de junio de 2024, notificada y archivada en autos al siguiente día.[4]

Por medio de la *Resolución* emitida el 22 de mayo de 2024, el foro *a quo* denegó la *Moción sobre Reconsideración* presentada por la parte peticionaria el 20 de mayo de 2024[5] donde esta solicitó la aprobación de su *Memorando de Costas al Amparo de la Regla 44*. Asimismo, concedió a la peticionaria diez (10) días para presentar la evidencia del desembolso de los gastos por concepto de costas. Advirtió que desembolso sobre el cual no se presentara evidencia no sería considerado. En su comparecencia ante nos, la parte peticionaria manifestó no estar conforme con dicha determinación. Específicamente planteó que, a tenor con la Regla 44.1 de Procedimiento Civil, *supra*, R. 44.1, la parte recurrida tenía diez (10) días jurisdiccionales e improrrogables, contados a partir de la notificación de dicho memorándum de costas, para expresar su inconformidad con las costas reclamadas. Sostuvo asimismo que la prórroga concedida por el foro *a quo* a través de una *Orden* emitida el 30 de abril de 2024, notificada y archivada en autos el mismo día,[6] fue *ultra vires* e improcedente como cuestión de derecho.

La parte peticionaria argumenta que dicho error desembocó en los demás errores planteados, pues, según sostuvo, el TPI no podía acoger los argumentos tardíos de la parte recurrida para eliminar algunos de los gastos por emplazamiento y ordenar a evidenciar los desembolsos de todas las costas reclamadas. Expuso

---

[3] Apéndice del recurso de *Certiorari*, Anejo XI, págs. 23-24.
[4] *Íd.*, Anejo XVII, págs. 51-52.
[5] *Íd.*, Anejo X, págs. 18-22. (Este escrito fue titulado *Moción en Oposición a Impugnación Tardía de Costas* por error).
[6] *Íd.*, Anejo VI, págs. 7-8.

la parte peticionaria que dicho acto fue arbitrario y denota un claro abuso de discreción, pues, conforme a la Regla 44.1 de Procedimiento Civil, *supra*, sólo se requiere una juramentación de parte o certificación del abogado o de la abogada a los efectos de certificar que las partidas incurridas son correctas y los desembolsos eran necesarios para la tramitación del pleito.

Por otro lado, a través de la *Resolución* emitida el 20 de junio de 2024, el foro primario denegó la *Moción de Reconsideración para que se Corrijan Costas Periciales* presentada por la parte peticionaria el 18 de junio de 2024.[7] Por medio del recurso de *Certiorari*, la parte peticionaria expresó su inconformidad con dicho dictamen. Específicamente, expuso que aun cuando proveyó prueba de todos los pagos, dicho foro volvió a actuar de forma parcializada cuando redujo las costas periciales juramentadas por la parte peticionaria y que luego fueron certificadas por el Dr. Boris Rojas, y eliminó las costas por concepto de emplazamiento.

El 27 de junio de 2024, emitimos una *Resolución* por la que le concedimos a la parte recurrida un término de diez (10) días, contados a partir de la notificación de dicha *Resolución*, para exponer su posición sobre los méritos del recurso. Además, le concedimos a la parte peticionaria hasta el 5 de julio de 2024 para mostrar causa por la cual no debíamos desestimar la petición de *Certiorari* respecto a la *Resolución* emitida el 22 de mayo de 2024 por falta de jurisdicción al presentarse de forma tardía.

El 1 de julio de 2024, la parte peticionaria presentó una *Moción Mostrando Causa* mediante la cual aclaró que la petición de *Certiorari* fue presentada el 24 de junio de 2024 ante la Secretaría del TPI, y dentro de 48 horas fue presentada ante este Foro. Por tanto, sostuvo que presentó el recurso dentro del término dispuesto

---

[7] *Íd.*, Anejo XVI, págs. 49-50.

en la Regla 52.2 (C) de Procedimiento Civil, *supra,* R. 52.2 (C), y solicitó que se diera por cumplida la orden de mostrar causa.

El mismo 1 de julio de 2024, la parte peticionaria presentó una *Moción en Cumplimiento con el Reglamento del Tribunal de Apelaciones.* Por medio de esta, sostuvo que, a tenor con la Regla 33 (A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 33 (A), le notificó al TPI y a la representación legal de la parte recurrida sobre la presentación del recurso de *Certiorari.*

El 2 de julio de 2024, emitimos una *Resolución* ordenando a la parte recurrida a cumplir con nuestra *Resolución* del 27 de junio de 2024.

Por su parte, el 8 de julio de 2024, la parte recurrida presentó una *Moción Solicitando se Declare Académica la Presente Petición de Certiorari.* Mediante la misma, el Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional Médico-Hospitalaria (SIMED), como asegurador del doctor Cruz Cestero, nos informó haber consignado en el foro primario un giro por la cantidad de $15,101.00 emitido por el Banco Popular con el número 10310220030670, en concepto de costas. Por lo tanto, solicitó que decláraramos la petición de *Certiorari* como académica.

El 9 de julio de 2024, emitimos una *Resolución* donde ordenamos a la parte peticionaria a mostrar causa, dentro de un término de cinco (5) días, a partir de la notificación de dicha *Resolución,* por la cual no debíamos desestimar el caso por tornarse académico.

El 12 de julio de 2024, la parte peticionaria presentó una *Oposición a Desestimación* mediante la cual se opuso a la solicitud de la parte recurrida. Arguyó, en lo pertinente que, la cantidad consignada no era consistente con la totalidad de las costas reclamadas que suman $15,251.20.

Estando perfeccionado el caso, consignamos, brevemente, el trasfondo procesal del mismo ante el foro primario.

**II.**

El caso de marras tiene su génesis el 21 de octubre de 2013 cuando la parte peticionaria presentó una *Demanda* en concepto de daños y perjuicios en contra de la parte recurrida, el doctor Rafael A. Vázquez Pelyhe, el Dr. José R. Cruz Cestero, sus respectivas esposas y sociedades de bienes gananciales, SIMED, el Hospital San Cristóbal y el Puerto Rico Medical Defense Insurance (PRMDic), entre otros, (en conjunto, codemandados).[8] En síntesis, la parte peticionaria arguyó que los codemandados incurrieron en negligencia por impericia médica al realizarle a la señora Báez Rivera un bloqueo cervical causándole así daños en su cordón espinal. Ante ello, solicitó $800,000.00 por concepto de angustias físicas y mentales; $300,000.00 en concepto de incapacidad física y mental; aproximadamente $20,000.00 por gastos médicos; y aproximadamente $5,000.00 por concepto de daños económicos o pecuniarios.

Por su parte, los codemandados presentaron sus contestaciones a la demanda donde negaron las alegaciones de la parte peticionaria e incluyeron sus defensas afirmativas.[9]

Luego de varios trámites procesales y la celebración del juicio, el 16 de febrero de 2023, el TPI emitió una *Sentencia* por la cual declaró no ha lugar a la demanda del caso de epígrafe por ausencia y falta de prueba pericial objetiva respecto a los alegados daños y su vínculo al doctor Cruz Cestero.[10]

El 31 de agosto de 2023, emitimos una *Sentencia* bajo el alfanumérico KLAN202300307 por la que revocamos dicha

---

[8] *Íd.*, Anejo XX, págs. 57-60.
[9] *Íd.*, Anejos XXI, págs. 61-64; *Íd.*, Anejo XXII, págs. 65-68; *Íd.*, Anejo XXIII, págs. 69-73; *Íd.*, Anejo XXIV, págs. 74-75.
[10] *Íd.*, Anejo I, pág.79. (Se toma conocimiento judicial de este hecho).

determinación y devolvimos el caso al foro *a quo* para la continuación de los procedimientos cónsono con lo allí resuelto.[11]

Subsiguientemente, el 1 de diciembre de 2023, el Tribunal Supremo de Puerto Rico dictaminó no ha lugar la *Petición de Certiorari* presentada por la parte recurrida (CC-2023-0689), y consecuentemente, se sostuvo el dictamen emitido por este Foro.[12]

Devuelto el caso al foro primario y después de varios tramites procesales, el 12 de abril de 2024, la parte peticionaria radicó un *Memorando de Costas al Amparo de la Regla 44.*[13] Por medio de este, sometió los gastos que, a su entender, debían ser considerados e incluidos en la imposición de costas, a tenor con la Regla 44 de Procedimiento Civil, *supra*, R. 44, reclamó una cantidad total de $15,251.20 en concepto de costas con los intereses procedentes.

El 30 de abril de 2024, el foro *a quo* emitió una *Orden*, notificada y archivada en autos el mismo día, a través de la cual le concedió a la parte recurrida un término de diez (10) días, a partir de la notificación de dicha orden, para presentar su posición en cuanto a la solicitud de costas.[14]

El 1 de mayo de 2024, la parte peticionaria radicó una *Moción Solicitando Pago de Costas* por la cual solicitó del foro primario la reconsideración de la *Orden* emitida el 30 de abril de 2024 y que le ordenara a la parte recurrida a pagar la cantidad de $15,251.20 en concepto de costas a favor de la parte peticionaria con el interés legal aplicable.[15]

El 2 de mayo de 2024, la parte recurrida presentó una *Moción en Torno al Memorando de Costas de la Parte Demandante.* Mediante esta, objetaron tres (3) cuantías de diligenciamiento de emplazamiento arguyendo que dichas cuantías no fueron necesarias

---

[11] *Íd.*, Anejo I, págs. 76-103.
[12] *Íd.*, Anejo II, pág. 104.
[13] *Íd.*, Anejo III, págs. 2-6.
[14] *Íd.*, Anejo VI, págs. 7-8.
[15] *Íd.*, Anejo V, págs. 9-11.

para prevalecer en el caso. Sostuvo también que las demás cuantías necesitaban ser evidenciadas, y una vez la parte peticionaria acreditara y evidenciara debidamente los gastos, procedían las costas.[16]

Por su parte, el 3 de mayo de 2024, la parte peticionaria presentó una *Moción en Oposición a Impugnación Tardía de Costas* por la cual expuso que la parte recurrida impugnó las costas reclamadas fuera del término de diez (10) días dispuesto en la Regla 44.1 de Procedimiento Civil, *supra*.[17] Por lo anterior, solicitó del foro primario que denegara la oposición de la parte recurrida y, consecuentemente, ordenara a dicha parte a pagarle $15,251.20 en concepto de costas con el interés legal aplicable.

El 7 de mayo de 2024, el TPI emitió una *Orden*, notificada y archivada el 8 de mayo de 2024, por la que el foro primario le concedió a la parte peticionaria un término de diez (10) días, a partir de la notificación de dicha orden, para presentar evidencia fehaciente que acreditara los pagos solicitados por concepto de costas.[18]

El 20 de mayo de 2024, la parte peticionaria radicó una *Moción sobre Reconsideración*,[19] por la cual sostuvo que, como la parte recurrida presentó inoportunamente su oposición al memorándum de costas, la prórroga concedida por el TPI para ello como la orden para presentar prueba de los pagos fueron *ultra vires* e improcedentes en derecho.

El 22 de mayo de 2024, el foro *a quo* emitió una *Resolución*, notificada y archivada en autos el 24 de mayo de 2024, donde denegó la solicitud de reconsideración de la parte peticionaria, y le otorgó a esta un periodo perentorio de diez (10) días para presentar

---

[16] *Íd.*, Anejo VII, págs. 12-13.
[17] *Íd.*, Anejo VIII, págs. 14-15.
[18] *Íd.*, Anejo IX, págs. 16-17.
[19] *Íd.*, Anejo X, págs. 18-22. (Este escrito fue titulado erróneamente *Moción en Oposición a Impugnación Tardía de Costas*).

prueba sobre el desembolso de los gastos en concepto de costas. Además, advirtió que, sobre el desembolso que no presentara prueba, no se estaría considerado.[20]

El 3 de junio de 2024, la parte peticionaria presentó una *Moción en Cumplimiento de Orden y Solicitud de Prórroga para Suplementar.*[21] Por medio de esta, sometió la evidencia requerida con excepción de las últimas tres (3) comparecencias del doctor Boris Rojas (doctor Rojas) al juicio por haber sido pagado en efectivo. Por último, solicitó un término de cinco (5) días para someter una certificación respecto a dichas comparecencias.

El 10 de junio de 2024, la parte peticionaria presentó una *Moción Suplementando Memorando* con la certificación del doctor Rojas desglosando los pagos recibidos como perito en el caso de marras; y una certificación del emplazador, el señor David Vargas Carlo, por las diligencias realizadas. Sin embargo, sostuvo la parte peticionaria no tener constancia por el gasto de sellos de rentas internas anexado a la demanda del caso de epígrafe.[22]

El 12 de junio de 2024, el TPI emitió una *Resolución*, notificada y archivada en autos el 14 de junio de 2024,[23] donde dictaminó académica la *Moción Suplementando Memorando*.

El 6 de junio de 2024, el foro *a quo* emitió una *Resolución*, notificada y archivada el 11 de junio de 2024;[24] esto es, previo a la presentación de la *Moción Suplementando Memorando*. Por medio de dicha resolución, el TPI concedió varias partidas como costas, incluyendo $8,500.00 en concepto de honorarios pagados al doctor Rojas. En total, confirió la cantidad de $14,201.00 en concepto de costas (pormenorizando dichos conceptos), y declaró académica la solicitud de prórroga para suplementar el memorándum de costas.

---

[20] *Íd.*, Anejo XI, págs. 23-24.
[21] *Íd.*, Anejo XII, págs. 25-40.
[22] *Íd.*, Anejo XIII, págs. 41-43.
[23] *Íd.*, Anejo XV, págs. 44-45.
[24] *Íd.*, Anejo XIV, págs. 46-48.

El 18 de junio de 2024, la parte peticionaria presentó una *Moción de Reconsideración para que se Corrijan Costas Periciales*[25] donde solicitó $9,400.00 en lugar de $8,500.00 por haberlo acreditado por medio de la *Moción Suplementando Memorando.* Por lo tanto, **solicitó $15,101.00 en conceptos de costas**.

El 20 de junio de 2024, el foro primario emitió una *Resolución*, notificada y archivada en autos el 21 de junio de 2024, por la que denegó la petición de reconsideración.[26]

A tenor con el trasfondo procesal consignado precedentemente, evaluamos el marco doctrinal para atender este recurso de *Certiorari.*

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016); ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 337-338 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[27] establece las instancias en las que el foro revisor posee autoridad

---

[25] *Íd.*, Anejo XVI, págs. 49-50.
[26] *Íd.*, Anejo XVII, págs. 51-52.
[27] Esta Regla dispone en lo pertinente que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la

para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corporation, et als.,*** 202 DPR 478, 486-487 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. de Caguas v. JRO Construction,*** 201 DPR 703, 709-710 (2019). Nuestro rol al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias, o de manejo del caso, y en la cautela que debemos ejercer para no interrumpir injustificadamente el curso corriente de los pleitos que se ventilan ante ese foro. ***Torres Martínez v. Torres Ghigliotty****,* 175 DPR 83, 97 (2008).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari.*[28]

---

justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

[28] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción es "[e]l más poderoso instrumento para hacer justicia reservado a los jueces es la discreción". *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004) (*citando a* *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981)). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *García López y otro v. E.L.A.*, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC,* supra, pág. 729 (*citando a* *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001)). Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011) (*citando a* *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997)); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, supra, pág. 91). Ello, ciertamente, constituiría un abuso de discreción.

---

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En ese sentido, nuestro más alto foro ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". ***Citibank et al. v. ACBI et al.,*** supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". Íd., pág. 736 (énfasis en el original eliminado). Véase, además, ***Trans-Oceanic Life Ins. v. Oracle Corp.***, 184 DPR 689, 709 (2012); ***Lluch v. España Service Sta.***, 117 DPR 729, 745 (1986).

**B.**

Por otro lado, el propósito de la imposición de costas es "restituir lo que una parte perdió por hacer valer su derecho al ser obligada a litigar y servir como disuasivo para la litigación inmeritoria, temeraria, o viciosa que se lleva a cabo con el propósito de retrasar la justicia". ***Class Fernández v. Metro Health Care Management System, Inc.***, 2024 TSPR 63; ***Rosario Domínguez v. ELA***, 198 DPR 197, 211-212 (2017); ***Auto Servi, Inc. v. E.L.A.***, 142 DPR 321 (1997). Asimismo, la Regla 44.1 de Procedimiento Civil, *supra*, regula la concesión de costas en nuestro ordenamiento jurídico, y expresamente dispone lo siguiente:

(a) *Su concesión.* Las costas se concederán a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

(b) *Cómo se concederán.* La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios en que se incurrió durante la tramitación del pleito o

procedimiento. El memorándum de costas se presentará bajo juramento de parte o mediante una certificación del abogado o de la abogada, y consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de *certiorari*. De haberse instado un recurso contra la sentencia, la revisión de la resolución sobre costas deberá consolidarse con dicho recurso.

. . . .

Según se desprende del inciso (b) de la Regla 44.1 (b) de Procedimiento Civil, *supra*, R. 44.1 (b), la parte prevaleciente en un caso tendrá un término de diez (10) días desde la notificación de la sentencia para presentar ante el tribunal y notificarles a las partes un memorando de costas bajo juramento de la parte o certificación del abogado o de la abogada; y "consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento". Véase además, ***Class Fernández v. Metro Health Care Management System, Inc.***, supra; ***Estado Libre Asociado de Puerto Rico v. El Ojo de Agua Development, Inc.***, 205 DPR 502, 527 (2020) (*citando a* R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 6ª ed. rev., San Juan, Ed. LexisNexis, 2017, pág. 622). Nuestro más alto foro ha determinado que este término de diez (10) días es jurisdiccional e improrrogable. ***Rosario Domínguez v. ELA***, supra, pág. 213; ***Colón Santos v. Coop. Seg. Mult. P.R.***, 173 DPR 170, 187 (2008). Por lo tanto, ante la presentación oportuna de un memorando de costas juramentado, "el tribunal tendrá que

determinar: cuál fue la parte que prevaleció en el pleito, y cuáles de los gastos en los que esta incurrió fueron necesarios y razonables". *Class Fernández v. Metro Health Care Management System, Inc.*, supra; *Estado Libre Asociado de Puerto Rico v. El Ojo de Agua Development, Inc.*, supra, pág. 529. Dicha determinación descansa en la sana discreción del tribunal. *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 935 (2012).

Sin embargo, no todos los gastos son recobrables, sino solamente aquellos que sean necesarios y razonables para la tramitación del caso, su procedimiento o apelación que un litigante debe reembolsarle al otro. *Class Fernández v. Metro Health Care Management System, Inc.*, supra; *Estado Libre Asociado de Puerto Rico v. El Ojo de Agua Development, Inc.*, supra, págs. 527-528. A esos efectos, nuestro máximo foro ha determinado que los gastos recobrables son sellos de radicación de las alegaciones, sellos cancelados en las mociones, gastos de emplazamiento, sellos cancelados para efectuar embargos, transcripción de evidencia, deposiciones y otros. *Class Fernández v. Metro Health Care Management System, Inc.*, supra.

### C.

Ahora bien, para que podamos intervenir en un caso es indispensable que el mismo sea justiciable. *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 766 (2016); *ELA v. Aguayo*, 80 DPR 552 (1958). Lo anterior "requiere que exista una controversia genuina, entre partes antagónicas, que permita adjudicarla en sus méritos y conceder un remedio con efecto real sobre la relación jurídica". *Torres Montalvo v. Gobernador ELA*, supra, pág. 766; *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920 (2011); *Amadeo Ocasio v. Pierluisi Urrutia*, 211 DPR 278, 284 (2023); *Hernández Santa v. Srio. De Hacienda*, 208 DPR 727, 738 (2022).

Uno de los factores para determinar si un caso es justiciable, es la norma de academicidad. El fin primordial de esta doctrina es "evitar el uso inadecuado de los recursos judiciales y evitar precedentes innecesarios". ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, 206 DPR 803, 815-816 (2021); ***Moreno v. U.P.R. II***, 178 DPR 969, 974-975 (2010); ***P.N.P. v. Carrasquillo***, 166 DPR 70, 75 (2005). Según ha establecido nuestro más alto foro, un caso es académico cuando "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto, que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, supra, pág. 816; ***Asoc. Fotoperiodistas v. Rivera Shatz***, supra, pág. 932; ***Moreno v. U.P.R. II***, supra, pág. 973. De la misma forma, un caso puede tornarse académico por cambios en los hechos judiciales o fácticos que surgen, durante el transcurso del caso. ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, supra, pág. 816; ***Anguiera v. J.L.B.P.***, 150 DPR 10, 19 (2000).

Si en efecto un caso se convierte en académico, el tribunal debe abstenerse de considerarlo en los méritos. ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, supra, pág. 816; ***Amadeo Ocasio v. Pierluisi Urrutia***, supra, pág. 287. **De igual modo, "[c]uando un caso de torna académico, el tribunal revisor tiene el deber de no tan sólo desestimar el recurso apelativo, sino también de dejar sin efecto el dictamen revisado y devolver el caso con instrucciones de que se desestime".** ***Moreno v. U.P.R. II***, supra,

pág. 975. (Énfasis suplido). El propósito de esta norma es prevenir que un dictamen que se tornó académico siga en vigor y obligue a las partes. Íd.

**IV.**

En el presente caso, la parte peticionaria presentó un recurso de *Certiorari* el 24 de junio de 2024 por el que solicitó la revocación de la *Resolución* emitida por el foro primario el 22 de mayo de 2024, y la *Resolución* emitida por el TPI el 20 de junio de 2024.

En cuanto a la *Resolución* emitida el 22 de mayo de 2024, el foro *a quo* denegó la solicitud de la parte peticionaria para que se aprobara el *Memorando de Costas al Amparo de la Regla 44* sin la oposición de la parte recurrida. La peticionaria apoyó su petición en que, a tenor con la Regla 44.1 de Procedimiento Civil, *supra*, la parte recurrida tenía diez (10) días jurisdiccionales e improrrogables, contados a partir de la notificación de dicho memorándum de costas, para expresar su inconformidad con las costas reclamadas. Expuso también que dicha regla, *supra*, solo requiere una juramentación de parte o certificación del abogado o de la abogada a los efectos de certificar que las partidas incurridas son correctas y los desembolsos eran necesarios para la tramitación del pleito. Además, sostuvo que dicha prórroga desembocó en los otros errores planteados; a saber, que el foro *a quo* acogiera los argumentos tardíos de la parte recurrida para eliminar algunos de los gastos por emplazamiento y ordenara evidenciar los desembolsos de todas las costas reclamadas.

Por otro lado, la parte peticionaria también solicitó ante nos la revocación de la *Resolución* emitida el 20 de junio de 2024 para que el TPI enmendara las partidas concedidas como costas por concepto de honorarios periciales.

En el presente caso, la parte peticionaria **solicitó $15,251.20** en concepto de costas con los intereses que procedan por medio del

*Memorando de Costas al Amparo de la Regla 44*. Sin embargo, el TPI en el ejercicio de su discreción, evaluó cuáles de los gastos en que incurrió dicha parte fueron necesarios y razonables. ***Maderas Tratadas v. Sun Alliance***, supra, pág. 935. Consecuentemente, el foro primario emitió una *Resolución* el 6 de junio de 2024, notificada y archivada el 11 de junio de 2024, por la cual **concedió $14,201.00**.

Así las cosas, la parte peticionaria radicó una *Moción de Reconsideración para que se Corrijan Costas Periciales* por la cual **solicitó $15,101.00**. Habiendo la parte recurrida consignado en el foro primario un giro por la cantidad de **$15,101.00**, las controversias ante nos se tornaron académicas. Tal como se expuso en la sección anterior, para la intervención en un caso es indispensable que el mismo sea justiciable. ***Torres Montalvo v. Gobernador ELA***, supra, pág. 766; ***ELA v. Aguayo***, supra. Uno de los factores para determinar si el pleito es justiciable es por medio de la doctrina de academicidad, la cual busca "evitar el uso inadecuado de los recursos judiciales y evitar precedentes innecesarios". ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, supra, págs. 815-816; ***Moreno v. U.P.R. II***, supra, págs. 974-975; ***P.N.P. v. Carrasquillo***, supra, pág. 75. Asimismo, un caso puede tornarse académico por cambios en los hechos judiciales o fácticos que surgen durante el transcurso del caso. ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, supra, pág. 816; ***Anguiera v. J.L.B.P.***, supra, pág. 19. **Cuando un caso se torna académico, "el tribunal revisor tiene el deber de no tan sólo desestimar el recurso apelativo, sino también de dejar sin efecto el dictamen revisado y devolver el caso con instrucciones de que se desestime"**. ***Moreno v. U.P.R. II***, supra, pág. 975. (Énfasis suplido).

Adviértase que la parte peticionaria exigió **$15,101.00** en concepto de costas,[29] y precisamente, dicha cantidad fue consignada en el foro *a quo* por medio de un giro por la parte recurrida, por lo que no hay controversias vivas antes nos. Por lo que la controversia se tornó académica.

Consecuentemente, y tras un análisis objetivo, sereno y cuidadoso del expediente, resulta procedente desestimar el recurso de *Certiorari* por academicidad.

**V.**

Por los fundamentos anteriormente expuestos, se desestima el recurso de epígrafe por academicidad.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[29] Apéndice del recurso de *Certiorari*, Anejo XVI, pág. 49.